**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | Judge: | Hon. Elaine E. Bucklo |
| | ) | | |
| Sam Juma, | ) | Case No. | 15 CV 4135 |
| | ) | | |
| Debtor. | ) | Appeal from Adv. | |
| _____ | ) | Proceeding #: | 14 A 00080 |
| | ) | | |
| R&J Construction Supply Co., Inc., | ) | Bankr. No: | 13-29618 |
| | ) | | |
| Appellant, | ) | Chapter 7 | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| Sam Juma, | ) | | |
| | ) | | |
| Appellee. | ) | | |

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION
HONORABLE PAMELA S. HOLLIS**

---

**<u>BRIEF OF APPELLEE, SAM JUMA</u>**

---

Joshua D. Greene (ARDC # 6292914)
Springer Brown, LLC
400 South County Farm Rd.
Suite 330
Wheaton, IL 60187
(630) 510-0000
Fax: (630) 510-0000
jgreene@springerbrown.com

## <u>TABLE OF CONTENTS</u>

**STATEMENT OF THE CASE**

A.     Statement of Appellate Jurisdiction ..........................................................5

B.     Statement of Issues and Standard of Review ..........................................5

C.     Statement of Facts ........................................................................6

**ARGUMENT**

I.     The Rooker-Feldman Doctrine is Inapplicable .......................................10

II.     The Bankruptcy Court Was Correct In Ruling That The Issue Of Malice Was Not

        Actually Litigated By The State Court ................................................11

III.    Defendant Is Not Precluded From Litigating The Issue Of Willfulness ...............16

IV.    The Bankruptcy Court Was Correct In Ruling That Plaintiff Had Failed To Prove

        All Necessary Elements of 11 U.S.C. §523(a)(6)...................................17

**CONCLUSION**

## TABLE OF AUTHORITIES

**CASES**

*Am. Family Mut. Ins. Co. v. Savockas*, 739 N.E.2d 445 (Ill. 2000)....................................13

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985)..........................................17

*Crestview Village Apartments v. U.S. Dept. of Housing and Urban Development*, 383 F.3d 552 (7th Cir. 2004) ........................................................................................11

*Exxon Mobil Corp v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).......................11

*First Weber Group v. Horsfall*, 738 F.3d 767 (7th Cir. 2013).............................5,12,16,17

*Freeman United Coal Mining Co. v. Office of Workers' Compensation Program*, 20 F. 3d 289 (7th Cir. 1994) .......................................................................................13

*Grogan v. Garner*, 498 U.S. 279 (1990)...........................................................................20

*Housing Auth. v. YMCA of Ottawa*, 461 N.E.2d 959 (Ill. 1984) ......................................13

*In re: Davis*, 638 F.3d 549 (7th Cir. 2011) ........................................................................6

*In re: Dvorak*, 118 B.R. 619 (Bankr. N.D. Ill. 1990) ......................................................15

*In re: Hess*, 1998 Bankr. Lexis 732 (Bankr. N.D. Ill. June 11, 1998)..............................20

*In re: Jacobs*, 448 B.R. 453 (Bankr. N.D. Ill. 2011) .......................................................14

*In re: Nikitas*, 326 B.R. 127 (Bankr. N.D. Ill. 2005) .......................................................14

*Kawaauhau v. Geiger*, 523 U.S. 57 (1998)......................................................................17

*Loman v. Freeman*, 890 N.E.2d 446 (Ill. 2008)...........................................................15,17

*Martel Enterprises v. City of Chicago*, 584 N.E.2d 157 (Ill.App.Ct. 1991)....................15

*Pederson v. Vill. of Hoffman Estates*, 8 N.E.3d 1083 (Ill.App.Ct. 2014).........................13

*S&S Automotive v. Checker Taxi Co.*, 520 N.E.2d 929 (Ill. App.Ct. 1988) .....................14

**STATUTES**

28 U.S.C. §157............................................................................................................5

28 U.S.C. §158............................................................................................................5

11 U.S.C. §523(a)(3)(B) ............................................................................................5

11 U.S.C. §523(a)(6)...................................................................................................5

## Statement of Appellate Jurisdiction

The district courts of the United States have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under 28 U.S.C. §157. *See* 28 U.S.C. §158(a)(1). The underlying adversary proceeding was brought pursuant to 11 U.S.C. §§523(a)(6) and (a)(3)(B), thus the matter was a core proceeding under 28 U.S.C. §§157(b)(2)(I) and (J). The parties agreed that the bankruptcy court had jurisdiction over the adversary proceeding pursuant to 28 U.S.C. §1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The bankruptcy court entered a final order ruling in favor of Sam Juma ("Juma") on April 30, 2015. Pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(1), R&J Construction Supply Co., Inc., n/k/a CCS Contractor Equipment & Supply, Inc. ("R&J") filed a Notice of Appeal in the bankruptcy court on May 8, 2015.

## Statement of Issues and Standard of Review

**Issue I**- Whether the Bankruptcy Court ruled correctly when it granted Juma's Motion in Limine barring the admission of R&J's Exhibit 11 for the purpose of establishing Juma's malice and when it refused to apply collateral estoppel to the findings of the Circuit Court of Cook County, Illinois that Juma acted with malice

**Standard of Review**: The bankruptcy court held an evidentiary hearing and issued a ruling finding that collateral estoppel did not bar Defendant from litigating the issue of malice. An appellate court applies a *de novo* review for the bankruptcy court's conclusions of law and clear error review for its findings of fact. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013); Fed. R. Bankr. P. 7052. An appellate court affords deference to a trial court's assessment of witness credibility. A trial court's credibility determination can virtually never

amount to clear error. *In re: Davis*, 638 F.3d 549, 554 (7th Cir. 2011). Accordingly, the bankruptcy court's findings of fact and credibility assessments at the hearing on Defendant's Motion in Limine are reviewed for clear error. Its application of law to the findings of fact and whether the issue of malice was actually litigated are reviewed *de novo*. *Id*. at 553.

**Issue II**-Whether the Bankruptcy Court ruled correctly in finding that Defendant's debt to Plaintiff was non-dischargeable and that Plaintiff failed to prove by preponderance of the evidence all the elements of 11 U.S.C. §523(a)(6).

**Standard of Review**:  The bankruptcy court held a trial on the merits of the 523(a)(6) claim and made findings of fact and credibility assessments. Its findings of fact are reviewed for clear error. *Davis*, 638 F.3d at 553 (7th Cir. 2011). An appellate court affords deference to a trial court's assessment of witness credibility. A trial court's credibility determination can virtually never amount to clear error. *Id.* at 554.

<u>**Statement of the Case**</u>

**A.      Background and The State Court Case**

In 2005, Juma met Daniel Vaughan ("Vaughan"), who was a general contractor with whom his father in law had worked. Tr. Vol.2, p. 108. The two decided to partner up and build new construction. Their arrangement was that Juma would take care of the financing and Vaughan would take care of the general contractor work that needed to be done. Tr. Vol. 2, p.110, lines 10-13. The expenses for the project were to be paid from a line of credit taken out by Juma. Tr. Vol. 2, p. 113. Once the line of credit was paid, Juma and Vaughan were to split the profits 50/50. Tr. Vol.2, p.21, lines 7-8. Vaughan, who was in his late 30's or early 40's at the time he met Juma, was much older than Juma and Juma trusted him, due to his relationship with

Juma's father in law. Tr. Vol. 2, p. 110-111. Juma formed an entity called Sam's Construction, and stored all corporate records and invoices at Vaughan's house. Tr. Vol. 2 at 12, 15, 114.

Juma and Vaughan then began construction on property located at 4401 West 53rd Street, Chicago, Illinois. Tr. Vol. 1, p. 14; Tr. Vol. 2, p. 17. Vaughan acted as the day-to-day manager of the project. Tr. Vol. 2, p. 112. Juma had no experience in the construction of new residential property. Juma was employed as a truck driver. Tr. Vol. 2, p. 25. He worked the night shift Monday through Friday, so was able to visit the construction site only once or twice per week. Tr. Vol. 2, pp. 107, 112.

Vaughan placed all orders for materials needed for the construction project and chose the vendors. Tr. Vol. 2, p. 113.  If Vaughan needed any financing or credit applications in order to obtain supplies, he would give the applications to Juma to complete. Tr. Vol. 2, p. 112. Some of the vendors for the project included Crawford Supplies, Patten Industries, Illinois Brick and R&J Construction ("R&J"). In August 2005, Juma filled out a credit application and submitted it to R&J. Tr. Vol. 2, p. 30; Pl. Ex. 2. Vaughan told him to do it because "he needed some equipment to construct the property for the second phase that he was working on." Tr. Vol. 2 at 34, lines 8-9. Juma did not know the purpose of the application was to rent concrete forms. Tr. Vol. 2 p. 43. Juma did not even know what construction forms were. Tr. Vol. 2, p. 28. The credit application itself makes no mention of construction forms. *See*, Pl. Ex. 2.

On August 9, 2005, construction forms were delivered by R&J to the construction site. Vaughan signed the delivery ticket for the forms. Tr. Vol. 2, p. 100-102; Pl. Ex. 10. Later, Juma began receiving calls from R&J regarding amounts that were due and requesting that construction forms be returned. Tr. Vol. 2, p. 46. Juma did not see the forms on the construction site and did know what happened to the forms. Tr. Vol. 2, p. 48-49, 52, 58, 68. He asked

Vaughan "multiple times" what happened to the forms, with Vaughan telling Juma that he would "take care of it. Tr. Vol. 2, p. 60. Ultimately, Juma was never able to obtain a location for the forms. Tr. Vol. 2, p. 60. Vaughan left for Ireland, and although Juma continued to contact him, for some time after that, Vaughan never told Juma where the forms could be found. Tr. Vol. 2 at 89-92, 117-18.

In 2006, R&J filed a complaint against Juma and Vaughan, and Sam's Construction, Inc. in the Circuit Court of Cook County, Illinois. The complaint contained numerous counts, including a count for conversion. However, the complaint did not contain an allegation that Juma had acted with malice. Pl. Ex. 2. Vaughan hired an attorney named Ian Erdos to represent both he and Juma. Tr. Vol. 1, p. 14-15. The attorney filed a motion to dismiss the complaint, which was granted in part as to Juma and Vaughan. Pl. Ex. 6. R&J then filed an amended complaint. The amended complaint contained a count for "Trover and Conversion" but it contained no allegations related to malice. Pl. Ex. 9, at Ex. A. The sole mention of malice is in the prayer for relief that immediately followed the conversion count. *Id.* Erdos withdrew as Juma's attorney, but walked Juma through the process of answering the amended complant. Tr. Vol. 1, pp. 17-18. On April 25, 2007, Juma filed an appearance, *pro se*, in the state court case, along with an answer to the amended complaint. Tr. Vol. 1, p. 22-23; Pl. Ex. 7, 8. However, Juma's answer was stricken by the state court. Pl. Ex. 9, ¶2.

On June 8, 2007, R&J filed a motion for summary judgment, which was noticed for hearing on June 19, 2007. Pl. Ex. 9. The motion for summary judgment contained no allegations of malice. *Id.* The exhibits to the filed motion for summary judgment consisted of copies of the credit application signed by Juma, the delivery ticket signed by Vaughan, invoices sent by R&J, a letter sent to Juma by R&J, and an affidavit signed by Leigh Hamm, a representative of R&J.

*Id.*. The affidavit recites almost verbatim the allegations in the amended complaint, and contains

no allegations of malice. *Id.*. Juma did not oppose the motion for summary judgment or appear at

the hearing scheduled for June 19, 2007. Tr. Vol. 1, pp. 31-32. On June 19, 2007, the state court

entered summary judgment in favor of R&J against Juma. Pl. Ex. 11. The order stated that "the

court enters a finding of malice in regards to the conversion of the leased construction forms." *Id.*

The order does not state what facts the state court relied upon in reaching this finding.

**B.      Motion in Limine in the Bankruptcy Court Below**

Juma filed a petition for relief under chapter 13 of the U.S. Bankruptcy Code on July 25,

2013. Pl. Ex. 14.  The case was subsequently converted to chapter 7. *Id.* R&J subsequently filed

a complaint to determine dischargeability under 11 U.S.C. §523(a)(3)(B) and (a)(6). *Id.* Juma

answered the complaint and the parties conducted discovery. Prior to trial, Juma filed a motion in

limine to bar the introduction of the state court judgment order for the purpose of proving malice

under 523(a)(6). The bankruptcy court held a trial on December 2, 2014, where the parties were

allowed to present evidence on whether the issue of malice was actually litigated in the state

court trial. The sole witness at that hearing was Juma, who testified regarding the state court

lawsuit and his participation.

After hearing the evidence, the bankruptcy court issued an oral ruling finding that R&J

had failed to meet its burden to prove that collateral estoppel barred Juma from litigating the

issue of malice. The fact that there was no evidence of what the state court considered in

reaching its finding, coupled with the fact that malice isn't a necessary element of conversion,

was persuasive to the bankruptcy court. As the court noted, the only allegation of malice was in

the prayer for relief contained in the amended complaint, and R&J's counsel drafted the

judgment order containing the finding of malice. The malice finding was simply surplusage and

not necessary to the judgment. The court then set the matter for trial on the underlying merits of the 523(a)(6) case.

**C.      Trial of the 523(a)(6) Complaint Before the Bankruptcy Court**

On January 29, 2015, the bankruptcy court held a trial of the merits of the underlying dischargeability adversary proceeding. There were two witnesses: Juma and Leigh Hamm, a representative of R&J. However, R&J's counsel spent a substantial amount of the trial attempting to re-argue the issues already decided for Juma's Motion in Limine. After hearing the evidence, the bankruptcy court took the matter under advisement and subsequently issued a written opinion. After explaining the basis for granting the Motion in Limine, the bankruptcy court found that R&J did not prove that the debt was incurred by willful and malicious injury. The court found Juma to be a credible witness and believed his testimony regarding his attempts to obtain a location of the construction forms from Vaughan and his lack of knowledge that the construction forms were being ordered. Attached to the Rule 8018 Appendix filed by R&J is a copy of the bankruptcy court opinion from which this appeal has been taken.

<u>Argument</u>

**I.      The Rooker-Feldman Doctrine is Inapplicable to the Present Matter**

R&J argues its opening brief, and in response to Defendant's Motion in Limine in the bankruptcy court, that the *Rooker-Feldman* doctrine prevents the bankruptcy court from "reviewing" the state court judgment order and that the bankruptcy court "overruled" the state court when it granted Defendant's Motion in Limine. R&J's reliance on the *Rooker-Feldman* doctrine is misplaced, as the *Rooker-Feldman* doctrine simply does not apply to the issue of malice because the issue of malice was not actually litigated by the state court.

The *Rooker-Feldman* Doctrine prevents federal courts from exercising jurisdiction over cases brought by state court losers challenging final state-court judgments rendered before the federal court proceeding commenced. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) It is a jurisdictional doctrine premised upon the fact that, because federal courts are courts of original jurisdiction, lower federal courts are not authorized to review appeals from state court judgments…" *Crestview Village Apartments v. U.S. Dept. of Housing and Urban Development*, 383 F.3d 552, 556 (7th Cir. 2004).

The *Rooker-Feldman* doctrine is not applicable in this case as to the issue of malice because the issue was not litigated by the state court. The bankruptcy court held an evidentiary hearing for the sole purpose of determining whether the state court had litigated the issue of malice and found that it had not, and that Defendant was not barred from litigating the issue before the bankruptcy court. In order for *Rooker-Feldman* to apply, the issue of malice would have had to be litigated before the state court. Only then is the bankruptcy court required to give the state court decision deference. The bankruptcy court here did not overrule the state court order in any way. Indeed, it was conceded at trial that the underlying judgment itself was valid and that there was a valid debt to R&J. The sole issue at trial on Defendant's Motion in Limine was whether malice had been litigated by the state court.

Plaintiff's reliance on *Rooker-Feldman* reveals a fundamental misunderstanding of the doctrine itself. If followed to its logical conclusion, R&J's strained interpretation of the *Rooker-Feldman* doctrine would, as a practical matter, eliminate the need for a collateral estoppel analysis any time a state court judgment order has been entered, as the federal court would always be required to give blind credit to the state court order as R&J would have happen in this case. Such reading of *Rooker-Feldman* is not supported by any of the cases cited by R&J, nor is

it supported by any other case interpreting the doctrine. Defendant was not a "loser" in state court on the issue of malice. A party cannot lose what he has no opportunity to contest. Therefore, the court should reject R&J's interpretation of the *Rooker-Feldman* doctrine.

## II.     The Bankruptcy Court Was Correct In Ruling That The Issue Of Malice Was Not Actually Litigated By The State Court

The bankruptcy court held an evidentiary hearing on Defendant's Motion in Limine and found that the issue of malice had not been actually litigated by the state court such that it should be given collateral estoppel effect. The sole witness at the evidentiary hearing was Juma and the bankruptcy court had an opportunity to hear his testimony and make credibility determinations based on the testimony. In so doing, the bankruptcy court found Juma to be a credible witness. This credibility determination should be given a great deal of deference. The bankruptcy court was also correct in its legal conclusions as to the law governing collateral estoppel.

R&J relies on a judgment of an Illinois state court as the basis for its assertion that collateral estoppel applies. Accordingly, Illinois law governs whether the order should be given preclusive effect as to the issue of malice. *See First Weber Group, Inc. v. Horsfall*, 738 F.3d 767 (7th Cir. 2013) (applying Wisconsin law of collateral estoppel to judgment order entered by Wisconsin court). The doctrine of collateral estoppel is an equitable doctrine that precludes a party from relitigating an issue already decided in a prior proceeding….Collateral estoppel is applicable only where the issue decided in the prior adjudication is identical with the one presented in the suit in question, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. A party claiming collateral estoppel has the burden of establishing it by clear, concise, and unequivocal evidence. *Pedersen v. Vill. Of Hoffman Estates*, 8 N.E.3d 1083, 1095 (Ill.App.Ct. 2014). *See also, Freeman United Coal Mining Co. v. Office of Workers'*

*Compensation Program*, 20 F.3d 289 (1994) (Party asserting collateral estoppel under federal law bears burden of proof). Collateral estoppel only applies to a point or question actually litigated and determined. *Housing Auth. v. YMCA of Ottawa*, 101 Ill.2d 246, 252 (1984) Additionally, the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation. *Am. Family Mut. Ins. Co. v. Savockas*, 193 Ill.2d 378, 387 (Ill. 2000). Thus, R&J had to prove by clear, concise and unequivocal evidence that the issue of malice was necessary to the conversion claim and actually litigated by the state court such that collateral estoppel should apply.

Here, Juma was represented by an attorney for only a portion of the underlying state court case. He filed a motion to dismiss the original complaint. The original complaint was amended, but the amended complaint contained no allegations supporting a finding of malice. Indeed the sole allegation of malice was contained in the prayer for relief attached to the conversion count. Juma's attorney withdrew and Juma then filed a pro se appearance and an answer to the amended complaint, which was subsequently stricken by the state court. R&J's summary judgment motion was then ruled on. The "summary judgment" motion contained no facts tending to show malice on the part of Juma. Rather, the attachments were simply the contracts referenced in the Amended Complaint and an affidavit from a representative of R&J verifying the facts in the Amended Complaint.

R&J had the opportunity at trial in the bankruptcy court to present evidence on the issue of whether malice was litigated by the state court. The sole witness it presented was Juma, who for his part did not recall what documents he had seen given the large amount of time that had elapsed between the state court proceedings and the bankruptcy case. R&J did not provide any evidence of what testimony was given at the summary judgment hearing, what documents were

13

given to the state court judge or what arguments were made to the state court judge. The record is completely devoid of any evidence of how the state court reached its determination that Juma acted with malice. In this regard, the bankruptcy court opinion of *In re: Jacobs*, 448 B.R. 453 (Bankr. N.D. Ill. 2011) is instructive.

In *Jacobs*, the plaintiff obtained a default judgment in the Circuit Court of Cook County consisting of actual damages and legal fees, as well as punitive damages. The judgment order stated that "This court expressly finds sufficient evidence of malice to warrant an entry of punitive damages as to both Defendants, jointly and severally." The Plaintiff then filed an adversary proceeding objecting to the dischargeability of debt in the bankruptcy court, and sought to have the state court order given preclusive effect. The bankruptcy court declined to give the order preclusive effect, finding that there were no facts or evidence presented indicating how the state court made its finding. It stated that "Detailed findings of fact from the earlier proceeding are necessary to enable the bankruptcy court in the subsequent adversary proceeding to determine which facts are actually proven, which issues were decided, and what was essential to the other court's judgment." *Id.* at 470. Similarly, R&J has provided no evidence of what the state court considered in reaching its malice finding although given the opportunity to do so at a full evidentiary hearing.

While labeled a "summary judgment" order, the "summary judgment" order entered by the state court was a default judgment order in substance because Juma's answer was stricken by the circuit court. Illinois subscribes to the majority view that a default judgment cannot form the basis for collateral estoppel. *In re: Nikitas*, 326 B.R. 127 (Bankr. N.D. Ill. 2005); *S&S Automotive v. Checker Taxi Co*., 520 N.E.2d 929 (1st Dist. 1988). Some courts have even held that summary judgment motions may not have preclusive effect if the defendant failed to contest

the motion. The court in *In re: Dvorak*, 118 B.R. 619 (Bankr. N.D. Ill. 1990) declined to give preclusive effect to a summary judgment order where the Debtor did not oppose the summary judgment motion. It stated that "When judgment is entered pursuant to an unopposed motion for summary judgment, as with most default judgments, the court has not heard the arguments or evidence of the party against whom judgment was entered….The phrase 'actually litigated' suggests that all parties to a dispute have been actively involved throughout the proceeding and have presented evidence and advocated their positions." *Id*. at 626. In *Dvorak*, just as in this case, the details of what happened during the state court proceedings were "sketchy" as the bankruptcy court in *Dvorak* was only provided with the complaint and judgments entered. It was not clear to the bankruptcy court what evidence had been offered to the state court on summary judgment. Nor is it clear what was presented to the state court judge by R&J on the issue of malice in this case.

Further supporting the bankruptcy court's determination that the issue of malice was not litigated in the underlying state court proceeding is that malice is not required in Illinois to prove conversion. In order to prove a claim for conversion, a plaintiff must show that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion or ownership over the property. *Loman v. Freeman*, 229 Ill.2d 104, 127 (Ill. 2008). However, "although conversion is considered an intentional tort because it requires an intentional exercise of dominion or control over a chattel, it does not require proof of malice, culpability or conscious wrongdoing. *Martel Enterprises v. City of Chicago*, 223 Ill.App.3d 1028, 1032-33 (Ill.App.Ct. 1991). The term "malice" is referenced only one time in the prayer for relief attached to the conversion count, but it didn't need to be. Malice

15

wasn't required to be pled by R&J in its complaint in order to succeed on its conversion claim. The finding of malice in the judgment order is merely surplusage without stating the evidentiary basis for such conclusion. As the bankruptcy court correctly pointed out at trial, R&J's counsel could have inserted practically anything into the order, such as a finding of punitive damages, and it would not have changed the underlying claim and judgment for conversion.

## III. Defendant Was Not Precluded From Litigating The Issue Of Willfulness

R&J also raises the issue, for the first time on appeal, that collateral estoppel also applies to the element of willfulness. The Seventh Circuit has stated the following in a recent review of the "willfulness" requirement of 523(a)(6):

> Willfulness requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury…Although *Geiger* refers to intentional torts to help explain the federal standard, it does not hold that all state-law intentional torts are "willful" for purposes of section 523(a)(6). "Willfulness" can be found either if the 'debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury.'(citations omitted) *Horsfall*, 738 F.3d 767, 774-75 (7th Cir. 2013).

In *Horsfall*, the Seventh Circuit found that the defendant was not precluded from litigating the issue of willfulness in the bankruptcy court despite the fact that the Wisconsin state court had entered a judgment against the defendant on a claim of conversion based on Wisconsin law. The court pointed out that the Wisconsin statute required only an intent to act, not an intent to injure that is required under 11 U.S.C. §523(a)(6). The elements of conversion in Illinois are virtually identical to the elements of conversion in Wisconsin. As the *Horsfall* court noted, Wisconsin law requires (1) intentional control or taking of property belonging to plaintiff; (2) without plaintiff's consent; which (3) resulted in serious interference with plaintiff's right to possess the property. *Horsfall*, 738 F.3d at 773. Illinois courts require that: (1) plaintiff has a right to the property; (2) he has an absolute and unconditional right to the immediate possession

16

of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion or ownership over the property. *Loman*, 229 Ill.2d at 127.

While worded differently by the courts, the standards are virtually identical for Illinois and Wisconsin. Both require an intentional "control or taking" of property. Neither state requires an intent to injure as a required element of proof. Thus, similar to the issue of malice, the issue of willfulness was not required to be decided by the Circuit Court of Cook County as part of the conversion claim. Since the Illinois statute does not require an intent to injure, the issue of willfulness was not litigated during the state court proceeding and Juma had the right to litigate the issue during the adversary proceeding in bankruptcy court.

## IV. The Bankruptcy Court Was Correct In Ruling That Plaintiff Had Failed To Prove All Necessary Elements of 11 U.S.C. §523(a)(6)

In determining whether a debt should be excepted from discharge under Section 523(a)(6), courts have focused on three points: (1) an injury caused by the debtor (2) willfully and (3) maliciously. *Horsfall*, 738 F.3d at 774. The burden is on the creditor to establish these facts by a preponderance of the evidence. *Id*. Willfulness requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Maliciousness requires that the debtor acted in conscious disregard of his duties or without just cause or excuse; it does not require ill-will or specific intent to do harm. *Horsfall*, 738 F.3d at 774. The question of whether an actor behaved willfully and maliciously is one of fact. When there are two permissible views of the evidence, the court's choice between them cannot be clearly erroneous. *Id*. An appellate court must be especially deferential toward a trial court's assessment of witness credibility. *Id., citing Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.E.2d 518 (1985).

At trial, R&J presented only two witnesses, Juma, who it called as an adverse witness, and Leigh Hamm, a representative of R&J. Juma testified that he met an individual named Daniel Vaughan through his father in law. At the time Vaughan was much older than Juma, and Juma trusted him because of Vaughan's prior relationship with Juma's father in law. Juma and Vaughan decided to partner up and build brand-new construction. Juma would take care of the financing and Vaughan would take care of the general contractor work. Juma had no experience in the construction of new residential property, and Vaughan acted as the day-to-day manager. Juma's role was to provide financing for the construction. After all bills were paid, Juma and Vaughan would split the profit 50/50.

Juma was employed as a truck driver and worked the night shift Monday through Friday. He was able to visit the construction site once or twice per week. Vaughan ordered all supplies for the project, but if he needed financing or had to complete any credit applications, those would be given to Juma to fill out. Vaughan chose the vendors, who included Crawford Supplies, Patten Industries, Illinois Brick and R&J Construction. The vendors were to be paid from a line of credit. After signing a credit application with R&J Construction, the next thing that Juma recalled was receiving phone calls from R&J representatives requesting return of construction forms. He approached Vaughan "multiple times" regarding the return of the construction forms and was always informed that Vaughn would take care of it. Juma testified that he did not order the forms and does not know where the forms are. He testified that he didn't even know what construction forms were at the time of the events in this case. The representative of R&J, Leigh Hamm, also testified that the delivery ticket was signed by Daniel Vaughan, who would have been the person on the construction site the day that the forms were delivered.

The bankruptcy court found Juma to be a credible witness, whose testimony was uncontroverted by R&J. These credibility determinations are to be given a great deal of deference by the appellate court. R&J, for its part, provided virtually no evidence to rebut Juma's testimony. Indeed, the testimony of Leigh Hamm, R&J's representative, actually supports Juma's testimony as he confirmed that Vaughan signed the delivery ticket and was on the construction site the day that the construction forms were delivered. Simply put, R&J's evidence on willfulness or maliciousness is woefully lacking.

Perhaps recognizing its lack of evidentiary support, R&J attempts to argue in its brief, similar to what it argued in the bankruptcy court at trial, that because Juma had a legal obligation to return the forms as a partner with Vaughan and as signatory to the financing application, that this legal obligation equates to a finding of willfulness and maliciousness. But this argument misses the mark. Juma did not deny that he had a legal obligation to return the forms and admitted that he was personally liable for the debt to R&J. But Juma's contractual liability does not amount to willfulness or maliciousness under the definition of 523(a)(6). R&J would have the court impute knowledge onto Juma of Vaughan's ordering of the forms and subsequent theft of the forms solely due to Juma's relationship with Vaughan for purposes of denying Juma's discharge under 523(a)(6). R&J argues in its opening brief that Juma may be held liable for Vaughan's acts as a partner, citing numerous cases interpreting the Illinois Partnership Act, but these authorities only support R&J's position that a partner may be held liable for an underlying debt incurred by another partner in the ordinary course of the partnership's business. None of the authorities cited support the position that the participation of one partner in a fraudulent scheme may be imputed to another innocent partner in a dischargeability proceeding.

19

This issue was directly addressed by the bankruptcy court in *In re: Hess*, 1998 Bankr. Lexis 732 (Bankr. N.D. Ill. June 11, 1998). In *Hess*, the Plaintiff argued that the nondischargeable debt of one spouse should be imputed to the other spouse, in part because they were alleged to be business partners. The bankruptcy court examined the numerous cases on the topic and held that liability should not be imputed onto an innocent partner for purposes of dischargeability proceedings. *Id*. at \*33-34. It examined the various theories for imputing liability onto an innocent partner and found that none of those theories supported such finding and that imputing liability frustrates the fresh start doctrine of bankruptcy. *Id.* at 32-33, *see also Grogan v. Garner*, 498 U.S. 279, 286 (1990)(noting the Bankruptcy Code's policy of a "fresh start"). A discharge in bankruptcy is designed for the "honest but unfortunate debtor" and imputing the fraud of one partner onto an innocent partner does not further this purpose.

Moreover, even the cases which support imputing liability onto an innocent partner limit the liability to acts which took place in the course of business of the partnership. Here, it's not clear that any fraud took place in the ordinary course of the partnership between Vaughan and Juma. The sole reason for the partnership was to construct a residence at a specific location. If the construction forms were moved to a different location by Vaughan, which is what R&J claims happened, they were moved to a location that was not involved in the business of Juma and Vaughan and there is no indication that Juma somehow benefitted from the removal of the forms. Thus, even the assertion that the fraud took place in the course of Vaughan and Juma's business is tenuous.

The bankruptcy court was correct in its factual findings that Juma did not act with willfulness or maliciousness. R&J presented virtually no evidence that Juma was aware that construction forms were being ordered, was at the job site on the date the forms were delivered,

20

or that he was aware of what happened to the forms. Once Juma learned the forms were gone, he did everything he could to have them returned to R&J by continuously contacting Vaughan to arrange for their return. These are not the actions of a party who has acted with any willful or malicious intent.

## Conclusion

The bankruptcy court's ruling in favor of Juma should be affirmed. The bankruptcy court held a trial on both Juma's Motion to Limine and the underlying dischargeability causes of action in the adversary proceeding. Though given the opportunity to do so, R&J failed to prove that it had litigated the issue of malice in Illinois state court and failed to prove that Juma had injured R&J both willfully and maliciously. The bankruptcy court had the opportunity to hear the testimony and judge the credibility of the witnesses and those determinations and findings should not be disturbed.

Dated: August 6, 2015                         SAM JUMA


                                              By: _/s/ Joshua D. Greene /s/
                                                  One of his attorneys

Joshua D. Greene (#6292914)
Springer Brown, LLC
400 South County Farm Rd.
Suite 330
Wheaton, Illinois 60187
(630) 510-0000
Fax: (630) 510-0004
jgreene@springerbrown.com